UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION
www.flmb.uscourts.gov

In re:                                                    Case No. 2:23-bk-00933-FMD
                                                          Chapter 11

LemonKind LLC,

                    Debtor.
_____/

## DEBTOR LEMONKIND LLC'S PLAN OF
## REORGANIZATION UNDER CHAPTER 11, SUBCHAPTER V

LemonKind, LLC, the above-captioned debtor and debtor in possession (the "**Debtor**"), by and through its undersigned legal counsel, pursuant to section 1189(b) of Title 11 of the United States Code ("**Bankruptcy Code**"), propose this Plan of Reorganization ("**Plan**") this 13th day of November 2023.

**Background for Cases Filed Under Subchapter V**

**A.      Description and History of the Debtors' Businesses**

This Plan is being submitted by the Debtor under Chapter 11, Subchapter V of the Bankruptcy Code (11 U.S.C. § 1181 *et seq.*) ("**Subchapter V**"). Bankruptcy Code section 1190 requires plans of reorganization filed under Subchapter V to include "a brief history of the business operations of the debtor." 11 U.S.C. § 1190(1)(B).

The Debtor was founded in 2014 by Ms. Irene Rojas Stanbury ("**Ms. Stanbury**"), who is also the Debtor's Chief Executive Officer and its owner.

The Debtor is a Florida limited liability company that sells health-centered beverages and dietary supplements. Its principal place of business is located at 836 Anacapa Street, Unit 22955, Santa Barbara, CA 93105. The Debtor utilizes third-party warehouses to store and distribute its products.

From its inception, the company has shown a commendable growth trajectory, with sales figures reflecting an upward trend: $555,567 in 2016 (the year it launched), $944,936 in 2017, breaching the million mark with $2,052,045 in 2018, and reaching its zenith with $2,970,926 in 2019. Even amid the 2020 global pandemic, the business demonstrated resilience with a small decline to $2,706,130, quickly rebounding to $4,159,803 in 2021 and a peak of $5,121,412 in 2022. Despite the recent downturn in 2023 with sales currently at $2,748,408, the Debtor has grossed over $21 million since its establishment. Remarkably, these achievements were attained with a lean team of 4-5 employees, without external investments, and with a business model grounded in woman minority ownership. All products are proprietary, having been developed, formulated, and launched entirely in-house.

The financial distress that led to the present reorganization surfaced only after a period of significant growth and stability.

Challenges began in 2021 when a third-party fulfillment center who misrepresented their capabilities leading to costly disruptions in inventory management and compromising customer relations. Thereafter, the Debtor recognized the need for greater control over its inventory and made the decision to lease its own warehouse.

While the Debtor was finding its footing, and during the most crucial time of year for sales, the Debtor was dealt another major blow. Specifically, one of the Debtor's most popular product lines is the sale of a pre-made juice that is sold in a drink pouch. Prior to the Petition Date, the Debtor's main supplier of the drink pouches informed the Debtor that it would be unable to meet the Debtor's production needs due to a labor shortage. The Debtor immediately sought a new supplier and found an Italian supplier that manufactured out of Brazil, but the qualification process required several expensive pilot runs.

The initial pilot run in July was challenging and resulted in the Debtor running out of stock and unable to fulfill orders in a timely manner. By the time the Debtor was able to run a successful batch of product, it had faced a loss of $900,000 in sales and its then-current inventory, which was perishable, began to expire as the Debtor awaited production (estimated retail value $600,000). The scheduled production was not only delayed but also had such deficiencies as lost ingredients and costly repackaging errors.

The Debtor's distress was further exacerbated by soaring labor costs, increased packaging expenses, and a dip in discretionary spending due to the economic downturn. The Debtor soon realized that, because of the lost revenue, it could not sustain the business expenses that were becoming due.

In light of the foregoing, on August 14, 2023 (the "**Petition Date**"), the Debtor initiated the above-captioned case ("**Case**") by filing its voluntary petition for reorganizational relief under Subchapter V.

**B.    Liquidation Analysis**

To confirm this Plan, the Court must find that all creditors and equity interest holders who do not accept this Plan will receive at least as much under this Plan as such claim and equity interest holders would receive in a chapter 7 liquidation ("**Liquidation Value**"). A liquidation analysis (the "**Liquidation Analysis**") is attached to this Plan as **<u>Exhibit A</u>**. The Debtor notes that the creditors are estimated to receive a 100% distribution on their allowed claims, a liquidation analysis is not applicable in this case. Notwithstanding, the Debtor has prepared a liquidation analysis which reflects that the creditors are receiving at least as much under this Plan as such claim and equity interest holders would receive in a chapter 7 liquidation.

**C.      Ability to make future plan payments and operate without further reorganization**

The Debtor must also show that it will have enough cash over the life of this Plan to make the required Plan payments and operate the Debtor's business. Bankruptcy Code section 1129(a) provides, in relevant part, that a plan of reorganization shall not be confirmed unless "[c]onfirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor . . . unless such liquidation or reorganization is proposed in the plan." 11 U.S.C. § 1129(a)(11).

The Debtor has provided projected financial information attached to this Plan as **Exhibit B** ("**Financial Projections**"). The Financial Projections were made in good faith and are based on historical earnings over the last seven (7) years. The Financial Projections show the Debtor will be able to avoid liquidation or further reorganization.

Bankruptcy Code section 1191(d) defines disposable income ("**Disposable Income**") as "income that is received by the debtor and that is not reasonably necessary to be expended . . . . [for] the maintenance or support of the debtor," or "for the payment of expenditures necessary for the continuation, preservation, or operation of the business of the debtor." 11 U.S.C. § 1191(d). To fund its repayment obligations under the Plan, the Debtor will use its Projected Disposable Income ("**PDI**") that is set forth in the Financial Projections during the 5-year plan period beginning on the date that the first payment is due under this Plan (the aforementioned period hereafter the "**Relevant Income Period**"). The final Plan payment is expected to be paid in or about December 2028.

While this Plan accounts for financial uncertainty and declining demand in the event of circumstances outside the Debtor's control, it provides self-contained means of further reorganization to ensure creditors receive no less than they would receive if the Debtors were liquidated. Specifically, this Plan has self-executing default provisions—subject to adjustments by the Court—which provide an alternate means of paying creditors no less than Liquidation Value.

Subchapter V plans of reorganization do not require acceptance by any impaired classes of claims and interests if certain conditions are met. Bankruptcy Code section 1191(b) provides that if a Subchapter V plan of reorganization meets the applicable requirements set forth in Bankruptcy Code section 1129(a)—other than those set forth in Bankruptcy Code sections 1129(a)(8), (10), & (15)—then "the court, on request of the debtor, *shall* confirm the plan . . . if the plan does not discriminate unfairly, and is *fair and equitable*, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan." 11 U.S.C. § 1191(b) (emphasis added).

The Debtor anticipates at least one impaired class of claims or interests will vote to confirm this Plan. Out of an abundance of caution, the Debtor requests this Plan be confirmed pursuant to Bankruptcy Code section 1191(b) if no impaired class of claims or interests votes to confirm this Plan. The Debtor respectfully submits that acceptance by impaired classes of claims and interests is not necessary, as this Plan does not discriminate unfairly and is "fair and equitable" under Bankruptcy Code section 1191.

Bankruptcy Code section 1191(c) provides a non-exhaustive list of requirements which must be met for a Subchapter V plan to be considered "fair and equitable," and therefore subject to confirmation without approval by any impaired classes of claims or interests. *See generally* 11 U.S.C. § 1191(c).

To be considered "fair and equitable," a Subchapter V plan of reorganization must meet Bankruptcy Code section 1129(b)(2)(A)'s requirements as to all classes of secured claims. 11 U.S.C. § 1191(c)(1). This Plan meets Bankruptcy Code section 1129(b)(2)(A)'s requirements. Specifically, Bankruptcy Code section 1129(b)(2)(A) requires that a plan of reorganization let secured creditors: (i) retain the entirety of their liens upon the property securing their claim, together with deferred cash payments totaling the value—as of such plan's effective date ("**Effective Date**")—of their interest in the property securing their claim; or (ii) receive the indubitable equivalent of the foregoing. 11 U.S.C. § 1129(b)(2)(A). This Plan allows secured creditors to retain their liens and receive deferred cash payments totaling the value—as of the Effective Date—of their interest in the property securing their claims, plus interest, and therefore meets Bankruptcy Code section 1129(b)(2)(A)'s requirements to be "fair and equitable."

To be considered "fair and equitable," a Subchapter V plan of reorganization must also provide, as of the Effective Date, that all of the Debtor's PDI in the 3-year period, or such longer period not to exceed 5 years as the court may fix, beginning on the date that the first payment is due under this Plan, will be applied to make payments under this Plan. 11 U.S.C. § 1191(c)(2)(A). Alternatively, "fair and equitable" Subchapter V plans of reorganization may distribute property thereunder of a value not less than PDI over the period described in Bankruptcy Code section 1191(c)(2)(A). 11 U.S.C. § 1191(c)(2)(B).

The Financial Projections show that, as of the Effective Date, all of the PDI for the Relevant Income Period will be applied to make payments under this Plan.

A Subchapter V plan of reorganization cannot be considered "fair and equitable" unless "there is a reasonable likelihood that the debtor will be able to make all payments under the plan" and "the plan provides appropriate remedies . . . to protect the holders of claims or interests in the event that the payments are not made." 11 U.S.C. § 1191(c)(3).

The Financial Projections show the Debtor will be able to make all payments under this Plan. By including self-executing default provisions which provide an alternate means for paying creditors no less than they would receive if the Debtor were liquidated, this Plan also provides appropriate remedies in the event payments are not made.

Bankruptcy Code section 1192 provides, in pertinent part, that—under a plan confirmed under Bankruptcy Code section 1191(b)—discharge of the Debtor's debts may not occur prior to "completion by the debtor of all payments due within the first 3 years of the plan, or such longer period not to exceed 5 years as the court may fix." 11 U.S.C. § 1192. Accordingly, all holders of allowed general unsecured claims ("**General Unsecured Creditors**") will retain their rights to collect against the Debtor's assets if the Debtor defaults under this Plan during the Relevant Income Period.

**You should consult with your accountant or other financial advisor if you have any questions pertaining to these projections.**

### ▮▮▮ Article 1: Summary

During the Relevant Income Period, this Plan proposes to pay creditors of the Debtor from the Debtor's revenue to promote the continuation, preservation, or operation of the business of the Debtor.

This Plan provides for:  
    1 class of priority unsecured claims;

    4 classes of secured claims;

    1 class of non-priority unsecured claims; and

    1 class of equity security holders.

All creditors should refer to Articles 3 through 6 of this Plan for information regarding the precise treatment of their claim.

**Your rights may be affected. You should read these papers carefully and discuss them with your attorney if you have one. If you do not have an attorney, you may wish to consult one.**

### ▮▮▮ Article 2: Classification of Claims and Interests

| | | |
|---|---|---|
| 2.01 | **Class 1** ..................... | All allowed claims entitled to priority under Bankruptcy Code section 507(a) (except administrative expense claims under Bankruptcy Code section 507(a)(2) and priority tax claims under Bankruptcy Code section 507(a)(8)). |
| 2.02 | **Class 2** ..................... | The claim of Amazon Capital Services, Inc. ("**Amazon Capital**") against the Debtor, pertaining to the Business Solutions Agreement between the parties and the collateral securing the Debtor's obligations under the agreement ("**Amazon Capital Collateral**"), to the extent allowed as a secured claim under Bankruptcy Code section 506. |
| 2.03 | **Class 3**.............. | The claim of Bank of Southern California ("**Bank SoCal**") against the Debtor, pertaining to the loan agreement between the parties and the collateral securing the Debtor's obligations under the loan agreement ("**Bank SoCal Collateral**"), to the extent allowed as a secured claim under Bankruptcy Code section 506. |
| 2.04 | **Class 4** ..................... | The claim of Crown Credit Company ("**CCC**") against the Debtor, pertaining to the master lease agreement for a SX3000-40 Crown Stalker 2023 ("**CCC Collateral**"), to the extent allowed as a secured claim under Bankruptcy Code section 506. |

| 2.05 | **Class 5** ...................... | The claim of the Small Business Administration ("**SBA**) against the Debtor, pertaining to the Economic Injury Disaster Loan ("**EIDL Loan**") and the collateral securing the Debtor's obligations under the loan agreement ("**SBA Collateral**"), to the extent allowed as a secured claim under Bankruptcy Code section 506 |
| --- | --- | --- |
| 2.06 | **Class 6** ...................... | All non-priority unsecured claims allowed under Bankruptcy Code section 502. |
| 2.07 | **Class 7** ...................... | All equity security interests in the Debtor. |

| | **Article 3: Treatment of Administrative Expense Claims, Priority Tax Claims, and Quarterly and Court Fees** | |
| --- | --- | --- |
| 3.01 | **Unclassified claims** | Under Bankruptcy Code section 1123(a)(1), administrative expense claims and priority tax claims need not be classified. Instead, the treatment of such claims are provided for in this Article 3 of this Plan. |
| 3.02 | **Administrative expense claims** | Pursuant to Bankruptcy Code section 1191(e), each holder of an administrative expense claim allowed under Bankruptcy Code section 503 will be paid through this Plan within 30 days of the Effective Date. The Debtor anticipates administrative expenses totaling approximately $28,000.00. |
| 3.03 | **Priority Tax Claims** | Each holder of a priority tax claim will be paid as allowed under Bankruptcy Code section 1129(a)(9) or as authorized and agreed to by the Debtor and the claimant. Allowed claims authorized under Bankruptcy Code section 507(a)(8) shall be paid in full, with statutory pre- and post- petition interest, within sixty months from the Petition Date, with payments starting thirty (30) days after the Effective Date of this Plan or the date on which such claim is allowed by a final non-appealable order, or on such other terms as may be agreed on by the holder of the claim and the Debtor. The Debtor is not aware of any priority tax claims. |
| 3.03 | **Statutory fees** | All fees required to be paid under 28 U.S.C. § 1930 that are owed on or before the Effective Date have been paid or will be paid timely as they come due; provided, however, that there are no statutory fees due pursuant to 28 U.S.C. § 1930(a)(6)(A) as this is a case under Subchapter V. |

## Article 4: Treatment of Claims and Interests Under this Plan

4.01    **Claims and interests shall be treated as follows under this Plan:**

| Class | Impairment | Treatment |
|---|---|---|
| **Class 1** - All allowed claims entitled to priority under Bankruptcy Code section 507(a) (except administrative expense claims under Bankruptcy Code section 507(a)(2) and priority tax claims under Bankruptcy Code section 507(a)(8)). | [   ] Impaired<br>[ X ] Unimpaired | This Class consists of all allowed claims entitled to priority under Bankruptcy Code section 507(a) (except administrative expense claims under Bankruptcy Code section 507(a)(2) and priority tax claims under Bankruptcy Code section 507(a)(8)).<br><br>Each holder of a Class 1 Priority Claim will be paid in full, in cash, on account of such Class 1 Priority Claim on the later of one hundred twenty (120) days after the Effective Date of this Plan or the date on which such claim is allowed by a final non-appealable order, or on such other terms as may be agreed on by the holder of the claim and the Debtor. The Debtor is unaware of any allowed Class 1 Priority Claims.<br><br>This Class is unimpaired by this Plan, and is not entitled to vote on this Plan. |
| **Class 2** – Amazon Capital | [ X ] Impaired<br>[   ] Unimpaired | This Class consists of Amazon Capital's Proof of Claim No. 9 asserting a claim totaling $34,542.43, fully secured by the Amazon Capital Collateral.<br><br>Unless this Class agrees to lesser treatment on account of its claim, Amazon Capital shall have an allowed secured claim in the amount of $34,542.43 payable over 60 months in monthly installments of principal and interest at the rate of 6% per annum, commencing on the Effective Date and continuing thereafter until the secured claim is paid in full. |

|  |  | This Class shall have a perfected post-confirmation lien against the Amazon Capital Collateral to the same extent and with the same validity and priority as its pre-petition lien without the need to file or execute any document as may otherwise be required under applicable non-bankruptcy law. |
|  |  | The collateral securing the claim underlying this Class is necessary for the continuation, preservation, and operation of the Debtor's business, so all payments made upon this Class shall be deemed to correspondingly reduce the Debtor's PDI. |
|  |  | This Class is impaired by this Plan, and is entitled to vote on this Plan. |
| **Class 3** – Bank SoCal | [ X ] Impaired<br>[    ] Unimpaired | This Class consists of Bank SoCal's Proof of Claim No. 10 asserting a claim totaling $338,562.80, fully secured by the Bank SoCal Collateral.<br><br>Unless this Class agrees to lesser treatment on account of its claim, Bank SoCal shall have an allowed secured claim totaling $338,562.80, less any principal paid  in the adequate protection payments received by Bank SoCal on account of such claim. The allowed secured amount shall be payable in accordance with the terms of the underlying loan documents. Specifically, (i) beginning on the first day of the first calendar month after the Effective Date, the Debtor will pay regular principal and interest payments to Bank SoCal, (ii) the applicable interest rate will be the Wall Street Journal Prime Rate, plus 3% per annum, (iii) the loan will re-amortize on a quarterly basis in accordance with the terms of the underlying loan |

documents, and (iv) the original maturity date (10 years, fully amortized, from September 2022) will apply.  The next re-amortization shall be in January 2024.

In addition to the foregoing loan payments, the Debtor shall pay $12,990.30 in fees and expenses. Beginning on the first day of the first calendar month after the Effective Date, the Debtor will make 24 equally monthly payments of $541.26 until the sum of $12,990.30 is paid in full, without interest.

Until this Class has been paid in full as provided herein, this Class shall have a perfected post-confirmation lien against the collateral securing its claim to the same extent and with the same validity and priority as its pre-petition lien without the need to file or execute any document as may otherwise be required under applicable non-bankruptcy law.

The collateral securing the claim underlying this Class is necessary for the continuation, preservation, and operation of the Debtor's business, so all payments made upon this Class shall be deemed to correspondingly reduce the Debtor's PDI.

This Class is impaired by this Plan and is entitled to vote on this Plan.

| | | |
|---|---|---|
| **Class 4** – CCC | [    ] Impaired<br>[ X ] Unimpaired | This Class consists of CCC's Proof of Claim No. 7, asserting a claim totaling $15,939.27, of which $15,181.00 is secured by the CCC Collateral (the "**CCC Secured Amount**"), and $758.27 (the "**CCC Unsecured Amount**") is unsecured. |

The Debtor surrendered, or will surrender within thirty (30) days of the Effective Date, the CCC Collateral to CCC in full satisfaction of the CCC Secured Amount.

Subject to further Objection by the Debtor to the Proof of Claim on record the CCC Unsecured Amount shall be a Class 6 claim in the amount of $758.27.

This Class is unimpaired by this Plan, and is not entitled to vote on this Plan.

| **Class 5** – SBA | [ X ] Impaired<br>[   ] Unimpaired | This Class consists of the SBA's scheduled claim totaling approximately $67,663.60.<br><br>The SBA shall have an allowed secured claim totaling $67,663.60, less adequate protection payments received by the SBA on account of such claim. The allowed secured amount shall be payable in accordance with the terms of the underlying loan documents, so that the original interest rate (3.75%), and original maturity date (30 years), will apply.<br><br>Until this Class has been paid in full as provided herein, this Class shall have a perfected post-confirmation lien against the collateral securing its claim to the same extent and with the same validity and priority as its pre-petition lien without the need to file or execute any document as may otherwise be required under applicable non-bankruptcy law.<br><br>The collateral securing the claim underlying this Class is necessary for the continuation, preservation, and operation of the Debtor's business, so |

| | | |
|---|---|---|
| | | all payments made upon this Class shall be deemed to correspondingly reduce the Debtor's PDI.

This Class is impaired by this Plan and is entitled to vote on this Plan. |
| **Class 6** – General Unsecured Claims | [ X ] Impaired<br>[    ] Unimpaired | This Class consists of allowed General Unsecured Creditors, excluding any "equity security holders" under Bankruptcy Code section 101(17) ("**Equity Security Holders**").

Beginning on the first day of the first calendar month after the Effective Date, and continuing every month thereafter, the Class shall receive a pro rata monthly distribution collectively totaling the Debtor's PDI for the month immediately preceding such payment, after payment of administrative expense claims and priority tax claims. This Class shall be paid every month until their allowed claims are paid in full, or 30 days after the Relevant Income Period expires, whichever is earlier.

The Debtor anticipates a 100% distribution to Class 6 creditors.

This Class is impaired by this Plan, and is entitled to vote on this Plan. |
| **Class 7** – All equity interests | [ X ] Impaired<br>[    ] Unimpaired | This Class consists of Equity Security Holders. Ms. Stanbury is the sole Equity Security Holder.

Equity Security Holders shall retain their interest in the Debtor.

Other than the ordinary course wages paid to Ms. Stanbury, no distributions |

or dividends shall be made by the Debtor to the Equity Security Holder until the earlier of: (i) the end of the life of this Plan; or (ii) such time as all allowed Class 6 claims are paid in full.

This Class is impaired by this Plan, and is entitled to vote on this Plan.

## Article 5: Allowance and Disallowance of Claims

| | | |
|---|---|---|
| 5.01 | **Claim Objections** | The Debtor may object to the amount or validity of any Claim within 60 days after the Effective Date by filing an objection with the Bankruptcy Court and serving a copy of the objection on the holder of the Claim. The Claim objected to will be treated as a Disputed Claim under the Plan.  If and when a Disputed Claim is finally resolved by the allowance of the Claim in whole or in part, the Debtor will pay the Allowed Claim in accordance with the Plan. |
| 5.02 | **Disputed Claims** | A disputed claim is a claim that has not been allowed or disallowed by a non-appealable final order, and as to which either: |
| | | (i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or |
| | | (ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated. |
| 5.03 | **Distribution on a Disputed Claim** | No distribution will be made on account of a disputed claim unless such claim is allowed by a non-appealable final order. |
| 5.04 | **Settlement of Disputed Claims** | The Debtor will have the power and authority to settle and compromise a disputed claim with the Court's approval and in compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure (each such rule a "**Bankruptcy Rule**" and, jointly and collectively, "**Bankruptcy Rules**"). |

| 5.05 | **Disputed Claim Reserve** | In determining the amount of the distributions due to the holders of Allowed Claims, the appropriate pro rata calculations required by this Plan shall be made as if all disputed claims were Allowed Claims in the full amount claimed by the holders thereof. |
| | | The distributions reserved for the holders of disputed claims shall be held in trust by the Debtor for the benefit of the holders of Allowed Claims whose Distributions are unclaimed and the holders of disputed claims pending determination of their entitlement thereto under the terms of this Plan. |

### Article 6: Provisions for Executory Contracts and Unexpired Leases

| 6.01 | **Assumed Contracts & Leases** | The Debtor shall assume the executory contracts and unexpired leases on the attached **Exhibit "C"**, including but not limited to the Amazon Servicing Contract.  The Debtor shall be deemed to have rejected all other executory contracts and unexpired leases, including but not limited to the non-residential real property lease for its prior warehouse, which the Debtor rejected during the case. |
| 6.02 | **Rejected Contracts and Rejection Damage Claims** | Except for executory contracts and unexpired leases that have been assumed, and if applicable assigned, before the effective date or under section 6.01 of this Plan, or that are the subject of a pending motion to assume, and if applicable assign, the Debtor will be conclusively deemed to have rejected all executory contracts and unexpired leases as of the effective date. |
| | | A proof of a claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than Thirty (30) days after the date of the order confirming this Plan. |

### Article 7: Means for Implementation of this Plan

| 7.01 | **Funding Source for Plan Payments** | Payments required under this Plan will be funded from revenues generated by the Debtor's continued operations. |
| 7.02 | **Distributions by Reorganized Debtor** | All distributions under this Plan shall be made by the Debtor, whether this Plan is confirmed pursuant to Bankruptcy Code sections 1191(a) or (b). |
| 7.03 | **Vesting of Assets** | If the Plan is confirmed under section 1191(a) of the Bankruptcy Code, except as otherwise provided in the Plan or in the order confirming the Plan, (i) confirmation of the Plan vests all of the property of the estate in the Debtor, and (ii) after confirmation of |

the Plan, the property dealt with by the Plan is free and clear of all Claims and Equity Interests of Creditors, equity security holders, and of general partners in the Debtor.

If the Plan is confirmed under section 1191(a) of the Bankruptcy Code, property of the estate includes, in addition to the property specified in section 541 of the Bankruptcy Code, all property of the kind specified in that section that the Debtor acquires, as well as earnings from services performed by the Debtor, after the date of commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 12, or 13 of the Bankruptcy Code, whichever occurs first.  Except as provided in section 1185 of the Bankruptcy Code, the Plan, or the order confirming the Plan, the Debtor shall remain in possession of all property of the estate

| | Article 8: General Provisions | |
|---|---|---|
| 8.01 | **Definitions and Rules of Construction** | The definitions and rules of construction set forth in Bankruptcy Code sections 101 and 102 shall apply when terms defined or construed in the Bankruptcy Code are used in this Plan. |
| 8.02 | **Effective Date** | The Effective Date shall be the 30th day following the date on which the Order Confirming this Plan is final and non-appealable. If neither an appeal, nor a motion for reconsideration are filed before 15 days after the Order Confirming this Plan is entered on the Court's docket, then the Effective Date shall be the 45th day following entry of the Order Confirming this Plan on the Court's docket, unless such day is a weekend or federal holiday, in which case the Effective Date shall advance to the next business day. |
| 8.03 | **Severability** | If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan. |
| 8.04 | **Binding Effect** | The rights and obligations of any entity named or referred to in this Plan will be binding upon and will inure to the benefit of the successors or assigns of such entity. |
| 8.05 | **Captions** | The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan. |

| 8.06 | **Controlling Effect** | Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), the laws of the State of Florida govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan or such other agreement, document, or instrument. |
| 8.07 | **Corporate Governance** | To the extent prohibited by Bankruptcy Code section 1123(a)(6), the Debtors will not issue non-voting equity interests, and their applicable governing documents will be deemed to have been amended as of the Effective Date of this Plan to prohibit such issuance. |
| 8.08 | **Retention of Jurisdiction** | Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, until the Reorganization Case is closed, the Bankruptcy Court shall retain the fullest and most extensive jurisdiction of the Reorganization Case that is permitted by applicable law, including any jurisdiction that is necessary or appropriate to ensure that the purposes and intent of this Plan are carried out. |
| 8.09 | **Management** | Ms. Stanbury shall serve as the Chief Executive Officer of the Debtor after confirmation of this Plan. So long as the Debtor continues to fulfill its monthly obligations under the terms of this Plan, Ms. Stanbury shall be compensated in the amount of salary that previously existed before the Petition Date.  This restriction shall last until all payments on account of Class 6 claims have been paid as provided in this Plan, at which time the Debtor may compensate Ms. Stanbury in the ordinary course of its business. |

| 8.10 | **Injunction** | **AS LONG AS THE DEBTOR IS NOT IN DEFAULT ON THE PAYMENTS UNDER THIS PLAN, ALL CREDITORS INCLUDING, WITHOUT LIMITATION, THE HOLDERS OF SCHEDULED AND FILED CLAIMS SHALL BE ENJOINED AND BARRED FROM TAKING ANY OF THE FOLLOWING ACTIONS ON ACCOUNT OF SUCH CLAIMS: (A) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING AGAINST MS. STANBURY; (B) ENFORCING, ATTACHING, COLLECTING OR RECOVERING IN ANY MANNER ANY JUDGMENT, AWARD, DECREE OR ORDER AGAINST MS. STANBURY; (C) CREATING, PERFECTING OR ENFORCING ANY LIEN OR ENCUMBRANCE AGAINST MS. STANBURY; (D) ASSERTING A SETOFF, RIGHT OF SUBROGATION OR RECOUPMENT OF ANY KIND AGAINST ANY DEBT, LIABILITY OR OBLIGATION DUE TO MS. STANBURY; (E) COMMENCING OR CONTINUING, IN ANY MANNER OR IN ANY PLACE, ANY ACTION THAT DOES NOT COMPLY WITH OR IS INCONSISTENT WITH THE PROVISIONS OF THIS PLAN OR THE CONFIRMATION ORDER; OR (F) INTERFERING WITH OR IN ANY MANNER WHATSOEVER DISTURBING THE RIGHTS AND REMEDIES OF MS. STANBURY. MS. STANBURY SHALL HAVE THE RIGHT TO INDEPENDENTLY SEEK ENFORCEMENT OF THIS INJUNCTION PROVISION IN THE BANKRUPTCY COURT OR, IN THE EVENT THE BANKRUPTCY COURT DETERMINES THAT IT LACKS JURISDICTION, IN SUCH OTHER APPROPRIATE COURT. THIS INJUNCTION PROVISION IS AN INTEGRAL PART OF THIS PLAN AND IS ESSENTIAL TO ITS IMPLEMENTATION. THE TERMS OF THIS INJUNCTION MAY INCLUDE SUCH OTHER TERMS, CONDITIONS, AND LIMITATIONS AS DETERMINED BY THE BANKRUPTCY COURT. THE RELIEF PROVIDED UNDER THIS GENERAL INJUNCTION PROVISION MAY ONLY BE MODIFIED OR TERMINATED VIA ENTRY OF A FINAL ORDER BY THE BANKRUPTCY COURT EXPLICITLY SO STATING.**<br><br>**THE DEBTOR REQUESTS THE COURT MAKE A RECORD OF THE FOLLOWING SPECIFIC FACTUAL FINDINGS: (I) MS. STANBURY SHARES AN IDENTITY OF INTEREST WITH THE DEBTOR; (II) MS. STANBURY HAS CONTRIBUTED SUBSTANTIAL ASSETS AND LABOR TO THE DEBTOR'S REORGANIZATION; (III)** |
|---|---|---|

MS. STANBURY IS A GUARANTOR FOR CERTAIN CLAIMS, DEBTS, AND LIABILITIES AGAINST THE DEBTOR; (IV) THIS PLAN PROVIDES A MECHANISM TO PAY THE CLASSES AFFECTED BY THE INJUNCTION IN FULL; AND (V) THIS GENERAL INJUNCTION PROVISION IS AN INTEGRAL PART OF THIS PLAN AND IS ESSENTIAL TO ITS IMPLEMENTATION.

| | | |
|---|---|---|
| 8.11 | **Modification of the Plan** | The Debtor may modify the Plan at any time before confirmation of the Plan pursuant to Section 1193(a) of the Bankruptcy Code. However, the Bankruptcy Court may require additional items including revoting on the Plan.<br><br>If the Plan is confirmed under Section 1191(a) of the Bankruptcy Code, the Debtor may also seek to modify the Plan at any time after confirmation only if (1) the Plan has not been substantially consummated *and* (2) the Bankruptcy Court authorizes the proposed modifications after notice and a hearing.<br><br>If the Plan is confirmed under Section 1191(b) of the Bankruptcy Code, the Debtor may seek to modify the Plan at any time only if (1) it is within 3 years of the Confirmation Date, or such longer time not to exceed 5 years, as fixed by the court *and* (2) the Bankruptcy Court authorizes the proposed modifications after notice and a hearing. |

**Article 9: Discharge and Special Tax Provisions**

| 9.01 | **Discharge** | If the Debtors' Plan is confirmed under Bankruptcy Code section 1191(a), on the effective date of this Plan, the Debtors and Reorganized Debtor will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in Bankruptcy Code section 1141(d)(1)(A), except that the Debtors and Reorganized Debtor will not be discharged of any debt:
|  |  | (i) imposed by this Plan; or
|  |  | (ii) to the extent provided in Bankruptcy Code section 1141(d)(6).
|  |  | If the Debtors' Plan is confirmed under Bankruptcy Code section 1191(b), confirmation of this Plan does not discharge any debt provided for in this Plan until the court grants a discharge on completion of all payments due within the first 5 years of this Plan, or as otherwise provided in Bankruptcy Code section 1192. The Debtors and Reorganized Debtor will not be discharged from any debt:
|  |  | (i) on which the last payment is due after the first 5 years of this Plan, or as otherwise provided in Bankruptcy Code section 1192; or
|  |  | (ii) if applicable, excepted from discharge under Bankruptcy Code section 523(a), except as provided in Bankruptcy Rule 4007(c).
| 9.02 | **Special Tax Provisions** | The issuance, transfer, or exchange of a security, or the making or delivery of an instrument of transfer under this Plan shall not be taxed under any law imposing a stamp tax or similar tax. There shall be no tax under any law imposing a stamp tax or similar tax due on the recording or execution of any documents related to: (i) transferring real or personal property to or from the Debtor; or (ii) financing obtained by the first transferee of any property from the Debtor as provided under this Plan.
|  |  | Specifically, but without limitation, there shall be no tax under any law imposing a stamp tax or similar tax due on the recording of any documents related to transferring property to or from the Debtor.

*Remainder of Page Intentionally Left Blank*

Dated: November 13, 2023                        **LEMONKIND, LLC**


                                                By: */s/ Irene Rojas Stanbury*
                                                IRENE ROJAS STANBURY
                                                Chief Executive Officer

                                                *Filer's Attestation: Pursuant to Local*
                                                *Rule 1001-2(g)(3) regarding*
                                                *signatures, Mike Dal Lago attests that*
                                                *concurrence in the filing of this paper*
                                                *has been obtained.*



Dated: November 13, 2023                        Respectfully submitted,

                                                **DAL LAGO LAW**
                                                999 Vanderbilt Beach Road
                                                Suite 200
                                                Naples, FL 34108
                                                Telephone: (239) 571-6877

                                                By: */s/ Mike Dal Lago*
                                                MICHAEL R. DAL LAGO
                                                Florida Bar No. 102185
                                                Email: mike@dallagolaw.com
                                                CHRISTIAN GARRETT HAMAN
                                                Florida Bar No. 1017079
                                                Email: chaman@dallagolaw.com
                                                JENNIFER M. DUFFY
                                                Florida Bar No. 1028911
                                                Email: jduffy@dallagolaw.com

                                                *Counsel for LemonKind, LLC,*
                                                *Debtor and Debtor in Possession*

## **Exhibit A Liquidation Analysis**

**LemonKind LLC**                                          **Exhibit A**
**Liquidation Analysis**
**Case 2:23-BK-00933**

| Claim | Payments under the Plan | Liquidation Value |
|---|---|---|
| **Secured** | | |
| Amazon Capital Services | 40,068.12 | |
| Bank of Southern CA (SBA ONE 7a loan) | 578,159.80 | |
| | | |
| **Unsecured** | | |
| ArcBest, Inc. | 16,988.17 | |
| Uline | 5,881.88 | |
| Wells Fargo Bank, N.A. (Business LOC) | 82,500.00 | |
| Skjodt-Barrett Foods, Inc. | 91,428.62 | |
| American Express National Bank (Amex Business Gold Rewards) | 16,103.80 | |
| American Express National Bank (Amex Platinum) | 177,479.52 | |
| Crown Equipment Corportation dba Credit Company | 758.27 | |
| Crown Equipment Corportation dba Crown Lift Trucks | 499.84 | |
| American Express National Bank | 12,781.00 | |
| American Express National Bank | 2,918.30 | |
| People Ready Inc | 8,538.06 | |
| Select Brands, LLC | - | |
| | | |
| **Total Payments under the Plan** | **1,034,105.38** | |

| | Liquidation Value |
|---|---|
| | Cash on Hand |
| | Inventory |
| (103,410.54) | Costs of Liquidation |
| **(103,410.54)** | **Total Liquidation Value** |
| | |
| 1,137,515.92 | **Net Plan payments vs Liquidation** |

## Exhibit B Financial Projections

**LemonKind LLC**
**Plan Projections**
**Case 2:23-BK-00933**

Exhibit B

| | Year 1 2024 | Year 2 2025 | Year 3 2026 | Year 4 2027 | Year 5 2028 | Plan Totals |
|---|---|---|---|---|---|---|
| **Beginning Cash** | 199,834 | 242,328 | 120,943 | 79,135 | 70,502 | 712,741 |
| **Gross Revenue** | 2,429,075 | 2,453,366 | 2,501,952 | 2,551,505 | 2,602,044 | 12,537,942 |
| **Operating Expenses** | | | | | | |
| Cost of Sales | 897,556 | 1,090,207 | 1,036,859 | 1,042,062 | 1,047,318 | 5,114,002 |
| Personnel, including payroll taxes and benefits | 386,756 | 398,190 | 409,624 | 409,710 | 409,797 | 2,014,078 |
| Operational Costs | 80,618 | 81,424 | 82,419 | 83,427 | 84,449 | 412,337 |
| Occupancy Costs | 85,018 | 87,568 | 90,195 | 92,901 | 95,688 | 451,370 |
| General & Administrative | 42,750 | 43,178 | 43,609 | 44,045 | 44,486 | 218,068 |
| Advertising | 680,141 | 686,942 | 693,812 | 700,750 | 707,757 | 3,469,403 |
| **Total Operating Expenses** | 2,172,839 | 2,387,509 | 2,356,518 | 2,372,896 | 2,389,496 | 11,679,257 |
| **Plan Payments** | | | | | | |
| **Administrative Expense Claims** | 26,500 | | | | | 26,500 |
| **Secured Claims** | | | | | | |
| Amazon Capital Services | 8,014 | 8,014 | 8,014 | 8,014 | 8,014 | 40,068 |
| Bank of Southern CA (SBA ONE 7a loan) | 57,816 | 57,816 | 57,816 | 57,816 | 57,816 | 289,080 |
| SBA EIDL | 8,772 | 8,772 | 8,772 | 8,772 | 8,772 | 43,860 |
| **Total Secured Claims** | 74,602 | 74,602 | 74,602 | 74,602 | 74,602 | 373,008 |
| **Total Administrative, Priority Tax, Priority, and Secured Claims** | 101,102 | 74,602 | 74,602 | 74,602 | 74,602 | 399,508 |
| Funds Available | 354,968 | 233,583 | 191,775 | 183,142 | 208,449 | |
| Unsecured Creditors | 112,640 | 112,640 | 112,640 | 112,640 | 112,640 | 563,202 |
| **Ending Cash** | 242,328 | 120,943 | 79,135 | 70,502 | 95,808 | |

LemonStand LLC
Case 2:23-BK-00933
Claims List

| Class | Name of Creditor | Claim No. | Name/Address where Notices should be sent | Name/Address of person signing claim | Secured Amount, if any | Priority Amount, if any | General Unsecured Amount, if any | Total Amount | Repayment Terms | Int Rate | Int $ | Total Repayment | Payment Amt | Payment Dates |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Secured** | | | | | | | | | | | | | | |
| | Amazon Capital Services | 9 | Amazon Capital Services, Inc. c/o K&L Gates LLP Attn: Brian Peterson 925 4th Avenue Suite 2900 Seattle, WA 98104 | Bank of Southern California, N.A. c/o Sam M Kuraishi 400 Spectrum Center Drive, Suite 500 Irvine, CA 92618 | 34,542.43 | | | 34,542.43 6%, 5 years | 6% | 5,525.69 | 40,068.12 | 667.80 1/1/24-12/31/26 | Quarterly over 1/1/24-12/31/2028 |
| 3 | Bank of Southern CA (SBA ONE 7a loan) | 10 | Spectrum Center Drive Suite 500 Irvine, CA 92618 | | 338,562.80 | | | 338,562.80 10 years | 12% | 243,242.80 | 578,159.80 | 4,818.00 11/8/23-10/8/33 | Quarterly over 1/1/24-12/31/2028 |
| 4 | Crown Equipment Corporation dba Credit Company | 7 | Sebaly Shillito + Dyer LPA c/o Robert Hanseman 40 N. Main St., Ste. 1900 Dayton, OH 45424 | | 15,181.00 | | | 15,181.00 | NA (Equipment returned) | | | | | |
| 5 | SBA EIDL | | | | 67,663.60 | | | 67,663.60 3.75% and 30 years | 3.75% | | | 731.00 | Quarterly over 1/1/24 |
| **General Unsecured** | | | | | | | | | | | | | | |
| 6 | Ardient, Inc. | 1 | Ardient, Inc. c/o Daniel L. Lott 3801 Old Greenwood Road Fort Smith, AR 72901 | Ardient, Inc. 3801 Old Greenwood Road Fort Smith, AR 72901 | $0.00 | $0.00 | $16,988.17 | $16,988.17 1/1/24-12/31/2028 | | | | 16,988.17 | $3,397.63 12/31/2028 | Quarterly over 1/1/24 |
| 6 | Uline | 2 | Uline c/o Dolce Zettler 12575 Uline Drive Pleasant Prairie, WI 53158 | Uline c/o Dolce Zettler 12575 Uline Drive Pleasant Prairie, WI 53158 | $0.00 | $0.00 | $5,881.88 | $5,881.88 1/1/24-12/31/2028 | | | | 5,881.88 | $1,176.38 12/31/2028 | Quarterly over 1/1/24 |
| 6 | Wells Fargo Bank, N.A. (Business LOC) | 3 | Wells Fargo Bank Small Business Lending Division PO Box 29482 MAC S4101-08C Phoenix, AZ 85038 | Wells Fargo Bank c/o Janet L Samuelson PO Box 29482 MAC S4101-08C Phoenix, AZ 85038 | $0.00 | $0.00 | $82,500.00 | $82,500.00 1/1/24-12/31/2028 | | | | 82,500.00 | $16,500.00 12/31/2028 | Quarterly over 1/1/24 |
| 6 | Skjodt-Barrett Foods, Inc. | 4 | Skjodt-Barrett Foods, Inc. 5 Precidio Court Brampton, Ontario L6S 6B7 Canada | Skjodt-Barrett Foods, Inc. 5 Precidio Court Brampton, Ontario L6S 6B7 Canada | $0.00 | $0.00 | $91,428.62 | $91,428.62 1/1/24-12/31/2028 | | | | 91,428.62 | $18,285.71 12/31/2028 | Quarterly over 1/1/24 |
| 6 | American Express National Bank (Amex Business Gold Rewards) | 5 | Beckett and Lee LLP PO Box 3001 Malvern, PA 19355-0701 | Beckett and Lee LLP c/o Gregory P Deegan PO Box 3001 Malvern, PA 19355-0701 | $0.00 | $0.00 | $16,103.80 | $16,103.80 1/1/24-12/31/2028 | | | | 16,103.80 | $3,220.76 12/31/2028 | Quarterly over 1/1/24 |
| 6 | American Express National Bank (Amex Platinum) | 6 | Beckett and Lee LLP PO Box 3001 Malvern, PA 19355-0701 | Beckett and Lee LLP c/o Gregory P Deegan PO Box 3001 Malvern, PA 19355-0701 | $0.00 | $0.00 | $177,479.52 | $177,479.52 1/1/24-12/31/2028 | | | | 177,479.52 | $35,495.90 12/31/2028 | Quarterly over 1/1/24 |
| 6 | Crown Equipment Corporation dba Credit Company | 7 | Sebaly Shillito + Dyer LPA c/o Robert Hanseman 40 N. Main St., Ste. 1900 Dayton, OH 45424 | Sebaly Shillito + Dyer LPA c/o Robert Hanseman 40 N. Main St., Ste. 1900 Dayton, OH 45424 | $0.00 | $0.00 | $758.27 | $758.27 1/1/24-12/31/2028 | | | | 758.27 | $151.65 12/31/2028 | Quarterly over 1/1/24 |
| 6 | Crown Equipment Corporation dba Crown Lift Trucks | 8 | Sebaly Shillito + Dyer LPA c/o Robert Hanseman 40 N. Main St., Ste. 1900 Dayton, OH 45424 | | $0.00 | $0.00 | $499.84 | $499.84 1/1/24-12/31/2028 | | | | 499.84 | $599.97 12/31/2028 | Quarterly over 1/1/24 |
| 6 | American Express National Bank | 11 | American Express National Bank c/o Zwicker & Associates P.C. PO Box 9043 Andover, MA 01810-1041 | Zwicker & Associates, P.C. c/o Karen L Belair PO Box 9043 Andover, MA 01810-1041 | $0.00 | $0.00 | $12,781.00 | $12,781.00 1/1/24-12/31/2028 | | | | 12,781.00 | $2,556.20 12/31/2028 | Quarterly over 1/1/24 |
| 6 | American Express National Bank | 12 | Zwicker & Associates, P.C. c/o Karen L Belair PO Box 9043 Andover, MA 01810-1041 | Zwicker & Associates, P.C. c/o Karen L Belair PO Box 9043 Andover, MA 01810-1041 | $0.00 | $0.00 | $2,918.30 | $2,918.30 1/1/24-12/31/2028 | | | | 2,918.30 | $583.66 12/31/2028 | Quarterly over 1/1/24 |
| 6 | Goldman Sachs LOC | | Zwicker & Associates, P.C. c/o Karen L Belair PO Box 9043 Andover, MA 01810-1041 | | $0.00 | $0.00 | $12,026.17 | $12,026.17 1/1/24-12/31/2028 | | | | 12,026.17 | $2,405.23 12/31/2028 | Quarterly over 1/1/24 |
| 6 | People Ready Inc | 13 | PeopleReady, Inc. c/o Tami L Ziegler 1015 A St Tacoma, WA 98402 | Select Brands, LLC c/o Kanji Schmidt, Esq. 120 South Riverside Plaza #2200 Chicago, IL 60606-3912 | $0.00 | $0.00 | $58,538.06 | $58,538.06 1/1/24-12/31/2028 | | | | 8,538.06 | $1,707.61 12/31/2028 | Quarterly over 1/1/24 |
| 6 | Select Brands, LLC | 14 | Select Brands, LLC c/o Kanji Schmidt, Esq. 120 South Riverside Plaza #2200 Chicago, IL 60606-3912 | People Ready Inc 1015 'A' St Tacoma, Wa 98402 | $0.00 | $0.00 | $59,818.72 | $59,818.72 | | | | - | $0.00 NA | |
| 6 | La Patera Investors | | Hirsch Blackwell LLP c/o Lauren Hoskins 3810 E. Sunshine St Ste 300 Springfield, MO 65809 | | $0.00 | $0.00 | $135,298.20 | $135,298.20 1/1/24-12/31/2028 | | | | 135,298.20 | $27,059.64 12/31/2028 | Quarterly over 1/1/24 |
| | **Total Unsecured** | | | | **$0.00** | **$0.00** | **$623,020.55** | **$623,020.55** | | | | 563,201.83 | **112,640.37** | |

# **Exhibit C Assumed Contracts**

None at this time, subject to amendment before confirmation.